**SECOND DIVISION**
**MERCIER, C. J.,**
**MILLER, P. J., and HODGES, J.**

**NOTICE: Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

**August 4, 2023**

# In the Court of Appeals of Georgia

A23A1163. MILLIRON v. ANTONAKAKIS.

MERCIER, Judge.

Following the dismissal of his action requesting injunctive relief against Emmanouil Antonakakis, Ryan Milliron appeals, contending that the trial court erred by determining that he had no right to force Antonakakis, a professor employed by the Georgia Institute of Technology ("Georgia Tech"), to produce documents directly to Milliron pursuant to Georgia's Open Records Act, OCGA § 50-18-70 et seq. Milliron also appeals the trial court's award of attorney fees to Antonakakis. For the reasons set forth below, we affirm the dismissal of Milliron's action, but we vacate the award of attorney fees and remand this case for a hearing on those fees.

1. We first consider Milliron's contention that his action against Antonakakis was improperly dismissed. On appeal, we review a trial court's ruling on a motion to

dismiss de novo, "accepting as true all well-pled material allegations in the complaint and resolving any doubts in favor of the plaintiff." *Maynard v. Snapchat, Inc.*, 313 Ga. 533, 535 (2) (870 SE2d 739) (2022) (citation and punctuation omitted).

So viewed, the record shows that, on July 10, 2022, Milliron submitted an Open Records Act request to Georgia Tech.[1] On the same day, Milliron sent an Open Records request for the same information to Antonakakis, individually, by emailing Antonakakis's personal counsel.[2] In this separate request, Milliron demanded a search of "any . . . privately held email account likely to have agency records[,]" but nonetheless acknowledged that "the appropriate course of action would be to transfer the [requested material] to Georgia Tech for processing through their Open Records staff."[3] Antonakakis did not individually respond to Milliron's request in his personal

---

[1] Milliron had made more than 30 requests since December 2021, and Georgia Tech had previously produced over 3,000 pages to him.

[2] Milliron requested "any materials collected or prepared in relation to any DARPA contract awarded to Georgia Tech," and any "work done on the Alfa bank allegations, tasking to look at Guccifer 2.0 or the hack of the DNC, and other white papers provided to the DOJ." Georgia Tech, through its Open Records officer, responded with 165 pages, and included information in the response that was collected from Antonakakis. .

[3] Milliron contends both that Antonakakis is involved with separate businesses that have worked with Georgia Tech and that Antonakakis may have emails in private accounts that relate to this work for Georgia Tech.

2

capacity, but Georgia Tech did respond and produced documents. Unsatisfied with the documents received from Georgia Tech, Milliron filed suit against Antonakakis in his individual capacity, seeking to force him to personally respond to the Open Records request and independently produce documents directly to Milliron.[4]

In response, Antonakakis filed a motion to dismiss for failure to state a claim under OCGA § 9-11-12 (b) (6) or, in the alternative, a motion for summary judgment. He also requested "reasonable attorney[] fees and other litigation costs reasonably incurred" pursuant to OCGA § 50-18-73 (b). After holding a hearing, the transcript of which Milliron has omitted from the appellate record, the trial court granted the motion to dismiss on November 4, 2022. In doing so, the trial court stated two bases for its decision. First, it rejected any argument that all State employees like Antonakakis are "directly and personally obligated to provide public records" under the Open Records Act; instead, the trial court determined that the statute obligates agencies to produce records, not individual employees of those agencies.[5] Alternatively, the trial court found that Georgia Tech has a "a clerk specifically

---

[4] Milliron also requested civil penalties under OCGA § 50-18-74 and an award of attorney fees.

[5] It is undisputed that Georgia Tech is an agency and that Antonakakis is not.

designated by an agency as the custodian of agency records" upon whom Open Records requests must be made, and, as such, Milliron's request directly to Antonakakis, rather than the proper designated officer, was improper and not viable.

The trial court further held that Antonakakis was entitled to attorney fees under OCGA § 50-18-73 (b) because Milliron lacked substantial justification for his action, but, rather than immediately quantifying the award at that time, the trial court requested supporting documentation from Antonakakis's counsel. . After Antonakakis's counsel subsequently submitted that supporting documentation, Milliron then filed a "Response to Defendant's Submission Regarding Attorneys' Fees and Motion for Reconsideration" on January 10, 2023. In this filing, Milliron challenged the sufficiency of the supporting documentation, requested a hearing on attorney fees, and stated: "At the very least, [the] Court should reconsider the fee award." Milliron also raised alternative arguments that his case should not have been dismissed, and, for the first time, he argued that he should be permitted to amend his original complaint against Antonakakis to add Georgia Tech as a party. Milliron emphasized, however: "Most immediately, Plaintiff urges the Court to revisit its decision that Plaintiff must pay for Defendant's reasonable attorneys' fees and costs."

On January 11, 2023, the trial court entered an order that awarded Antonakakis $53,874.51 in attorney fees and costs. That order does not expressly address Milliron's "Response to Defendant's Submission Regarding Attorneys' Fees and Motion for Reconsideration," but it does state that the "entire record" was considered. This appeal followed.

Milliron's contention that the trial court improperly dismissed his action against Antonakakis fails because his Open Records request was not properly submitted. In matters involving an Open Records request, we must begin by recognizing the legislative intent behind the Open Records Act:

> The General Assembly finds and declares that the strong public policy of this state is in favor of open government; that open government is essential to a free, open, and democratic society; and that public access to public records should be encouraged to foster confidence in government and so that the public can evaluate the expenditure of public funds and the efficient and proper functioning of its institutions. The General Assembly further finds and declares that there is a strong presumption that public records should be made available for public inspection without delay.

OCGA § 50-18-70 (a). However, this legislative intent, even at its strongest, does not place a burden of production on any and all State entities, only those entities identified in the Open Records Act. In addition, the Act mandates that requests must be submitted in specific ways to be properly made.

As previously recognized,

> [a] statute draws its meaning . . . from its text. Under our well-established rules of statutory construction, we presume that the General Assembly meant what it said and said what it meant. To that end, we must afford the statutory text its plain and ordinary meaning, we must view the statutory text in the context in which it appears, and we must read the statutory text in its most natural and reasonable way, as an ordinary speaker of the English language would. Though we may review the text of the provision in question and its context within the larger legal framework to discern the intent of the legislature in enacting it, where the statutory text is clear and unambiguous, we attribute to the statute its plain meaning, and our search for statutory meaning ends.

*Patton v. Vanterpool*, 302 Ga. 253, 254 (806 SE2d 493) (2017) (citations and punctuation omitted).

The pivotal section of the Open Records Act identifies to whom a proper request for public documents must be made. OCGA § 50-18-71 (b) (1) (B) states:

> A request made pursuant to this article may be made to the custodian of a public record orally or in writing. *An agency may, but shall not be obligated to, require that all written requests be made upon the responder's choice of one of the following: the agency's director, chairperson, or chief executive officer, however denominated; the senior official at any satellite office of an agency; a clerk specifically designated by an agency as the custodian of agency records; or a duly designated open records officer of an agency; provided, however, that the absence or unavailability of the designated agency officer or employee shall not be permitted to delay the agency's response.* At the time of inspection, any person may make photographic copies or other electronic reproductions of the records using suitable portable devices brought to the place of inspection. Notwithstanding any other provision

6

of this chapter, an agency may, in its discretion, provide copies of a record in lieu of providing access to the record when portions of the record contain confidential information that must be redacted.

(Emphasis supplied.)

Here, the trial court expressly found that Georgia Tech has a designated Open Records officer to whom requests must be sent,[6] a fact which Milliron has acknowledged, and Milliron does not dispute that neither Antonakakis nor his personal attorney is that Open Records officer. As such, under the plain terms of OCGA § 50-18-71 (b) (1) (B), Milliron's request for documents sent directly to Antonakakis was not properly submitted, and the trial court correctly determined that the faulty request is not a viable means to support Milliron's action for an injunction. See generally, *Vanterpool*, 302 Ga. at 254. For this reason, Milliron's attempt to enforce an improper request fails as a matter of law, and the trial court properly dismissed his case. See OCGA § 50-18-71 (b) (3) ("The enforcement provisions of Code Sections 50-18-73 and 50-18-74 shall be available only to enforce compliance and punish noncompliance *when a written request is made consistent with this*

---

[6] Milliron did not challenge this finding in his motion for reconsideration.

7

*subsection* and shall not be available when such request is made orally.") (emphasis supplied).[7]

Milliron's reliance on *Cardinale v. Keane*, 362 Ga. App. 644 (869 SE2d 613) (2022), does not alter this result. In that case, the plaintiff filed an Open Records action against a private attorney who had previously represented the City of Atlanta and a City of Atlanta Councilman, claiming that these individuals had custody of certain public City records. Id. We held that the plaintiff's claims survived an OCGA § 9-11-12 (b) (6) motion to dismiss because: (1) the allegations of custodianship were factual assertions that had to be accepted; (2) the pro se plaintiff's pleadings had to be held to less stringent standards than formal pleadings drafted by lawyers; (3) evidence could possibly be introduced to prove that the individuals had control over the public records sought; and (4) the parties had extensively contested whether the City had a designated public records officer to whom requests had to be made, and the trial court had not yet ruled on that issue. Id. at 651-653 (3). In sharp contrast here, the trial court expressly found (and there is no evidence of any dispute) in this fully counseled case that Georgia Tech had a designated Open Records officer to

---

[7] Because we affirm the trial court's ruling on this basis, we need not consider and do not reach its alternative basis that only agencies have a duty to produce documents under the Open Records Act.

handle requests. In fact, Milliron acknowledged in his request to Antonakakis that documents should be conveyed to Georgia Tech's Open Records staff. There is also no dispute that Antonakakis is not that designated officer. *Cardinale*, therefore, does not control here, and Milliron's reliance on that case to challenge the trial court's holding is misplaced.

2. Milliron next argues that the trial court erred by denying his request to add Georgia Tech as a party to his action against Antonakakis. As previously set forth, Milliron made this request for the first time in his "Response to Defendant's Submission Regarding Attorneys' Fees and Motion for Reconsideration" filed two months after the trial court's initial decision. In a nutshell, Milliron argues that, even if the trial court had correctly decided in its dismissal order that only agencies, not employees of agencies like Antonakakis, had a duty to produce records, Milliron should be allowed to join Georgia Tech as the appropriate agency. Assuming without deciding that Milliron has preserved this contention, it relates directly to the trial court's ground for dismissal that we need not and do not address. And, it has no bearing on the ground that we affirm – Milliron's action against Antonakakis was properly dismissed because his Open Records request was not directed to Georgia Tech's designated Open Records Officer. In any event, "[w]hether to permit a party

9

to raise a new argument on motion for reconsideration filed after judgment is entered lies within the discretion of the trial court." *Neely v. City of Riverdale*, 298 Ga. App. 884, 888 (3) (681 SE2d 677) (2009). Milliron has proven no abuse of that discretion.[8] For all of these reasons, Milliron's enumeration in this regard fails to prove any reversible error by the trial court.[9]

3. Milliron argues that the trial court erred by awarding attorney fees to Antonakakis, contending that his action was based on substantial justification, that the evidence provided in support of Antonakakis's fees was insufficient, and that the trial court failed to hold an evidentiary hearing prior to imposing fees. For the reasons set forth below, we agree that the trial court erred by failing to hold a hearing on attorney fees prior to entry of the award.

---

[8] An abuse of discretion would be extremely difficult for Milliron to prove, as he vehemently and repeatedly argued that he had the right to sue Antonakakis in his individual capacity without including Georgia Tech *until* the trial court ruled against him on that argument.

[9] We also note that, as Milliron recognizes, he never obtained a direct ruling on this issue prior to filing his notice of appeal. In any event, his "Response to Defendant's Submission Regarding Attorneys' Fees and Motion for Reconsideration" made clear that Milliron's "most immediate[]" issue was the award of attorney fees, not the alternative arguments. That attorney fee issue is addressed in Division 3 of this opinion.

OCGA § 50-18-73 (b) authorizes a trial court to award reasonable fees and costs upon a finding that a plaintiff acted without substantial justification when bringing an action under the Open Records Act. Specifically, this statute provides:

> In any action brought to enforce the provisions of this chapter in which the court determines that either party acted without substantial justification either in not complying with this chapter or in instituting the litigation, the court shall, unless it finds that special circumstances exist, assess in favor of the complaining party reasonable attorney[] fees and other litigation costs reasonably incurred. Whether the position of the complaining party was substantially justified shall be determined on the basis of the record as a whole which is made in the proceeding for which fees and other expenses are sought.

Id. "The award of attorney[] fees is discretionary under this statute[,] and the decision of the superior court will be interfered with only where this discretion has been abused." *Richmond County Hosp. Auth. v. Southeastern Newspapers Corp*., 252 Ga. 19, 21 (311 SE2d 806) (1984). Because an award of OCGA § 50-18-73 (b) attorney fees is premised on a finding that a party acted without substantial justification, the fees award is "not much different from the fees authorized under the law generally applicable in civil actions. See OCGA § 9-15-14 (a)-(b)." *Deal v. Coleman*, 294 Ga. 170, 182 (2) (b) n. 20 (751 SE2d 337) (2013). "As used in [OCGA § 9-15-14 (b)], 'lacked substantial justification' means substantially frivolous, substantially

11

groundless, or substantially vexatious." *Sprenkle v. Sprenkle*, 363 Ga. App. 703, 706 (2) (872 SE2d 472) (2022) (punctuation omitted).

Under OCGA § 9-15-14 (b), "it is 'black letter law' that a hearing is required to enter an award of attorney fees." *Moore v. Moore*, 307 Ga. App. 889, 899 (1) (706 SE2d 465) (2011). "[T]he trial court must conduct an evidentiary hearing to determine the amount of reasonable and necessary attorney fees, and the failure to do so is reversible error." Id. (citation and punctuation omitted). The requirement for a hearing, however, may be waived expressly or by conduct. See *Williams v. Becker*, 294 Ga. 411, 413 (2) (a) (754 SE2d 11) (2014).

Here, the record shows that, prior to the time that the trial court made a determination as to the amount and reasonableness of the attorney fees, Milliron requested a hearing. And, given the noted similarity between the findings required by both OCGA § 50-18-73 (b) and OCGA § 9-15-14, *Coleman*, 294 Ga. at 182 (2) (b) n. 20, it stands to reason that OCGA § 9-15-14's requirement for a hearing on the reasonableness of attorney fees also applies to OCGA § 50-18-73 (b). For this reason, the trial court erred by failing to hold an evidentiary hearing, as requested by Milliron. Accordingly, we vacate the award of attorney fees and remand this case in

order for the trial court to hold an evidentiary hearing on Antonakakis's fees request.

*Moore*, 307 Ga. App. at 899 (1).

*Judgment affirmed in part, vacated in part, and case remanded with direction. Miller, P.J., and Hodges, J., concur.*